UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEETEX LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ZEETEX, LLC, et al.,<br><br>    Defendants. | Case No. 20-cv-07092-JSW<br><br>**ORDER GRANTING ZHU DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 64, 67 |

Now before the Court for consideration is the motion for summary judgment filed by Defendants Jiajie Zhu ("Zhu") and Zeetex, LLC ("Zeetex") (collectively, "Zhu Defendants"). The Court has reviewed the parties' papers, relevant legal authority, and the record in the case, and it finds this matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for April 29, 2022. For the following reasons, the Court GRANTS the Zhu Defendants' motion.

**BACKGROUND**

**A.   Procedural Background.**

Plaintiff Teetex, LLC ("Teetex" or "Plaintiff") filed this trademark infringement action against the Zhu Defendants and Shanghai Tianan Textile Co., Ltd ("STA") on October 13, 2020. (Dkt. No. 1.) The original complaint asserted claims for breach of fiduciary duty against STA and Zhu, trademark infringement against the Zhu Defendants, trade secret misappropriation against all Defendants, and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code section 17200 *et seq*. The Zhu Defendants moved to dismiss. (Dkt. No. 20.) In response, Plaintiff filed the first amended complaint and did not re-allege the fiduciary duty and UCL claims. (Dkt. No. 24.) The Zhu Defendants again moved to dismiss. (Dkt. No. 25.) On June 24,

2021, the Court issued an order granting, in part, and denying, in part, the motion to dismiss. (Dkt. No. 39.) The Court found that Plaintiff plausibly alleged a trademark infringement claim but dismissed the trade secret claims as time-barred. (*Id*.)

On August 12, 2021, Plaintiff filed a motion to amend the complaint, which the Zhu Defendants did not oppose. (Dkt. Nos. 52, 53.) Plaintiff filed the second amended complaint ("SAC") on September 3, 2021. (Dkt. No. 55.) The SAC asserts three claims for relief: (1) a trademark infringement claim against the Zhu Defendants; (2) a breach of contract claim against STA; and (3) a UCL claim against all Defendants. (*Id*.)

On February 26, 2022, the Zhu Defendants moved for summary judgment on Plaintiff's first and third claims for relief. (Dkt. No. 67.) Plaintiff responded, and the Zhu Defendants submitted a reply. (Dkt. Nos. 68, 70.)

**B.     Factual Background.**

    **1.     Teetex and Zeetex.**

Founded in 2012, Teetex designs, manufactures, and sells bedding textiles. (SAC ¶ 11; *see also* Declaration of Dong Chen ("Chen Decl.") ¶ 2.) Teetex works with wholesale customers to design textile products, select factories to manufacture the products, and oversee the manufacturing process. (*Id*. ¶ 19.) Teetex contracts with factories, primarily in China, to manufacture its products. (*Id*. ¶ 21.)

Until 2016, Zhu held a 70% ownership interest in Teetex, which he sold in 2016. (Declaration of Jiajie Zhu ("Zhu Decl.") ¶ 3.) In 2018, Zhu formed his own textile company, Zeetex. (SAC ¶ 41.) Plaintiff claims the Zeetex name is almost identical to Teetex and that the logos, shown below, are similar:

   

(*Id*. ¶ 42.) Plaintiff alleges that Zeetex's mark is confusingly similar to Teetex's mark particularly in light of its use in the same segment of the textile market. (*Id*. ¶ 44.) According to Teetex, this has led to confusion among Teetex's customers. (*Id*.)

Teetex identified two customers who were allegedly confused about the relationship between Teetex and Zeetex—Pegasus and Newport. (*See* Declaration of Brian Irion ("Irion

Decl.") ¶¶ 2-7; Exs. 1-4.) Newport was Zeetex's sole customer. (*Id*.) Newport's purchasing manager, Matt Raminiak, attests that he was never confused about the relationship between Zeetex and Teetex and knew that they were different companies. (Declaration of Matt Raminiak ("Raminiak Decl.") ¶¶ 2, 5.) Zeetex never made sales to Pegasus. (Zhu Decl. ¶ 16.)

### 2. Allegations Involving Defendant STA.

Plaintiff alleges that from 2012 through 2016, STA acted as Teetex's agent in China and handled communications with Teetex's Chinese suppliers. (SAC ¶ 30.) Plaintiff alleges it entered into an agency agreement with STA in 2014, which provided that STA would protect the exclusive rights and rights and designs of Teetex. (*Id*. ¶ 18.) In 2015, STA increased the fee it charged for its services, and Teetex sought to terminate its relationship with STA. (*Id*. ¶ 32.) Plaintiff alleges that STA breached the agency agreement by disclosing Teetex's confidential and propriety information to the Zhu Defendants. (*Id*. ¶ 38.) STA has not yet been served.

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.     Applicable Legal Standard.**

"A party may move for summary judgment, identifying each claim or defense … on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is

1  "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-
2  moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material"
3  if it may affect the outcome of the case. *Id.* at 248. Once the moving party meets its initial
4  burden, the non-moving party must "identify with reasonable particularity the evidence that
5  precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting
6  *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also* Fed. R. Civ. P. 56(c)(3)
7  ("The court need consider only the cited materials, but it may consider other materials in the
8  record."). If the non-moving party fails to point to evidence precluding summary judgment, the
9  moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     The Zhu Defendants are Entitled to Summary Judgment on the Trademark Claim.**

To show trademark infringement, a plaintiff must establish ownership of a trademark or likelihood of consumer confusion. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 874 (9th Cir. 2014). To analyze the likelihood of confusion, courts consider the following eight factors, referred to as the *Sleekcraft* factors: (1) strength of the mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) the defendants' intent; and (8) likelihood of expansion. *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (citing *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft*"). The analysis under the *Sleekcraft* factors is fluid and best viewed as providing helpful guideposts. *Brookfield Commc'ns v. W. Coast Entm't Corp.*, 174 F.3d 1035, 1054 (9th Cir. 1999). "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Id*. "For example, a showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion." *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004).

Although not typically favored, summary judgment in trademark cases may be entered when no genuine issue of material fact exists. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005).

4

### 1. Evidence of actual confusion.

Evidence of actual confusion by consumers is strong evidence of likelihood of confusion. *Id*. at 633. Here, it is undisputed that Teetex has no evidence of actual consumer confusion. The Zhu Defendants submit evidence establishing that neither of the customers Teetex identified was actually confused. Newport's purchasing manager attests that he knew at all times the companies were different, (*see* Raminiak Decl. ¶ 5), and Pegasus was never a customer of Zeetex. (Zhu Decl. ¶ 16.) In opposition, Plaintiff admits that it has no evidence of actual confusion. (Opp'n at 7.) Accordingly, there is no genuine issue of material fact with regard to the issue of actual confusion. This factor strongly favors the Zhu Defendants. "Because actual confusion is at the heart of the likelihood of confusion analysis," the undisputed lack of evidence of actual confusion alone likely precludes summary judgment. *Playboy*, 354 F.3d at 1026. However, the Court will examine the remaining *Sleekcraft* factors in the interest of thoroughness.

### 2. Strength of the mark.

The strength of the mark determines the level of trademark protection to which the mark is entitled. *Surfvivor*, 406 F.3d at 631. The strongest sets of marks are "arbitrary" and "fanciful" marks, which trigger the highest degree of trademark protection. *Id*. at 631. "Arbitrary" marks use common words that have no connection with the actual product. *Id*. at 632. "Fanciful" marks consist of "coined phrases" that also have no commonly known connection with the product at hand. *Id*. "Suggestive" marks do not "describe the products features but suggest [ ] them." *Kendall–Jackson Winery v. E. & J. Gallo Winery,* 150 F.3d 1042, 1047 n.8 (9th Cir.1998) (emphasis omitted). Some imagination is required to associate a suggestive mark with the product. *Id*. "Descriptive marks define a particular characteristic of the product in a way that does not require an exercise of the imagination. *Kendall–Jackson Winery,* 150 F.3d at 1047 n.8. Because descriptive marks merely describe a characteristic of the product, they do not receive any trademark protection unless they acquire sufficient "secondary meaning" to create an association between the mark and the product. *See id*. at 1047. The final category of marks consists of "generic" marks, which describe the product in its entirety, and which are not entitled to trademark protection. *See id.* at 1047 & n.8.

The Zhu Defendants argue that Teetex is descriptive is therefore entitled to little trademark protection. In support of this contention, the Zhu Defendants point to judicially noticed facts in the record showing that "tex" is a suffix used commonly by companies in the textile industry. Plaintiff contends that Teetex is fanciful and entitled to the highest degree of protection. Plaintiff asserts that Teetex is not descriptive because it does not define qualities of the product. Plaintiff does not address the Zhu Defendants' arguments related to the "tex" suffice.

Teetex is at best a suggestive mark. The suffix "tex" suggests textiles, but the name does require some imagination to associate the mark with the product. Although stronger than a descriptive or generic mark, suggestive marks are still "presumptively weak." *Brookfield*, 174 F.3d at 1058. Although sufficient marketplace recognition can transform a suggestive mark into a strong mark, Teetex has not come forth evidence establishing widespread industry recognition of its mark. Accordingly, the Court finds that Teetex has not demonstrated that it has strengthened its mark to such an extent that this factor weighs in favor of finding likely confusion. This factor weighs in favor of the Zhu Defendants.

**3.     Relatedness of the goods.**

The standard for deciding whether the parties' goods or services are "related" is whether customers are "likely to associate" the two product lines. *Dreamwerks*, 142 F.3d at 1131. The court must also consider whether the buying public could reasonably conclude that the products came from the same source. *See Sleekcraft*, 599 F.2d at 348 n.10. Here, both parties' manufacture and sell textiles to wholesalers. However, there is no evidence in the record that customers associate the two products or conclude that the products come from the same source. Indeed, as discussed above, Plaintiff concedes that there is no evidence of actual confusion.

**4.     Similarity of the marks.**

In considering the degree of similarity between the two marks, the Court keeps in mind the following framework: "(1) similarity is best evaluated by appearance, sound, and meaning; (2) marks should be considered in their entirety and as they appear in the marketplace; and (3) similarities weigh more heavily than differences." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127-28 (9th Cir. 2014) (citing *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th

6

Cir. 2002)).

Phonetically, Zeetex and Teetex are similar, and the sound subfactor favors Plaintiff. On the other hand, the marks are visually dissimilar. Although both feature a capitalized initial letter, the marks are different colors, use different fonts, and are in different shapes. Neither party presented evidence of the mark in context. The Court concludes that, even weighing the similarities more heavily than differences, this factor does not weigh strongly in favor of either party.

### 5. Marketing channels.

The Court must also determine whether the parties distribute their goods in the same marketing channels. Here, both parties are in the same industry and participate in at least some of the same trade shows. Accordingly, there is overlap in marketing channels. This factor slightly favors Teetex.

### 6. Degree of consumer care.

In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a "reasonably prudent consumer" would take the time to distinguish between the two product lines. *Brookfield Comm., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir.1999). When products are marketed primarily to sophisticated or expert buyers, it is expected that those customers would exercise a high degree of care, and be less confused, in making their purchasing decisions. *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1537 (9th Cir. 1989).

The Zhu Defendants offer evidence that wholesale buyers of large textile lots are sophisticated and knowledgeable. (*See generally* Raminiak Decl.) In opposition, Teetex concedes that the purchasers "are likely to use due care" in their purchasing decisions. (Opp'n at 7.) Thus, it is undisputed that the relevant customers are sophisticated, professional wholesale buyers who would exercise care, and be less confused, in making their purchasing decisions. Accordingly, the Court finds this factor weighs against a likelihood of confusion.

### 7. Defendants' intent.

While "an intent to confuse consumers is not required for a finding of trademark

infringement," *Brookfield,* 174 F.3d at 1059, "intent to deceive is strong evidence of a likelihood of confusion," *Interstellar Starship Servs., Ltd. v. Epix Inc.,* 184 F.3d 1107, 1111 (9th Cir. 1999). "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft,* 599 F.2d at 354 (citations omitted). The point is not that an intent to confuse is relevant as some measure of culpability. *Entrepreneur Media*, 279 F.3d at 1148. Rather, the alleged infringer's judgment as to what is likely to be confusing is relevant because it may well be accurate. *Id*.

Here, Zhu had knowledge of Teetex's mark given his prior affiliation with Teetex. However, that inference provides no direct evidence of Zhu's judgment concerning the likelihood of confusion, and is therefore, not particularly relevant to answering the question of likelihood of consumer confusion. *See Entrepreneur Media*, 279 F.3d at 1148. Indeed, the direct evidence in the record indicates that there was no intent to deceive. In a form email to potential customers, Zhu informed customers about his former affiliation with Teetex and explained that Zeetex was a different company from Teetex. (Zhu Decl. ¶ 10-11, Ex. 2.) Accordingly, the Court finds this factor weighs against finding a likelihood of confusion.

### 8. Likelihood of expansion.

To resolve this factor, the Court must assess whether the existence of the allegedly infringing mark is hindering Plaintiff's expansion plans. *See Entrepreneur Media,* 279 F.3d at 1152. Plaintiff provides no evidence related to this factor and has not alleged any interest in expanding its product line. This factor does not weigh strongly in favor of either party.

### 9. Overall balance of *Sleekcraft* factors.

On balance, application of the *Sleekcraft* factors does not raise a material issue of fact regarding the likelihood of confusion. In particular, Plaintiff's concession that there is no evidence of actual confusion alone weighs heavily in favor of finding no infringement as a matter of law. Because there is no material issue of fact regarding actual confusion between the marks, Court grants summary judgment in favor of the Zhu Defendants on Plaintiff's trademark infringement claims. Because Defendants are entitled to summary judgment on this basis, the

8

Court will not reach the parties' arguments related to damages.

### C. Plaintiff's UCL Claims Against the Zhu Defendants Fail.

The parties agree that Plaintiff's unfair competition claims against the Zhu Defendants rise and fall with the trademark infringement claims. State law claims of unfair competition pursuant to California Business and Professions Code section 17200 are "substantially congruent" to claims made under the Lanham Act. *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994). Because Plaintiff's trademark infringement claim fails, its unfair competition claims also fail. *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 (9th Cir. 2002) (affirming district court's grant of summary judgment on state law claims where related Lanham Act claim failed). Zhu Defendants are entitled to summary judgment on Plaintiff's state law claims.

In opposition, Plaintiff appears to assert, for the first time, a claim of tortious interference against the Zhu Defendants. (*See* Opp'n at 10.) This claim is not alleged in the complaint and was raised only in the response to the Zhu Defendants' motion for summary judgment. When a plaintiff raises a new theory at summary judgment and where a defendant will be prejudiced, the Ninth Circuit has held that plaintiff cannot raise a new theory for the first time in opposition to summary judgment. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000). "A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Id*. at 1292. Here, discovery has closed and adding a new theory of liability would prejudice the Zhu Defendants. Although Plaintiff was previously granted leave to amend, it did not allege a claim for tortious interference of contract, and it has not shown good cause to be permitted to do so now. Accordingly, the Court will not consider this late-raised claim.

### D. The Court Resolves the Joint Discovery Letter.

Plaintiff asks the Court to defer consideration of the Zhu Defendants' motion until the Court resolves the discovery disputes raised in the parties' joint discovery letter brief, filed February 18, 2022. (*See* Dkt. No. 64.) The discovery letter brief raises issues related to: (1) discovery regarding Zeetex's relationship with STA; (2) production of the financial records of Zeetex and Teetex; and (3) Teetex's production of redacted documents without a privilege log.

9

The Court concludes that these issues do not impact the resolution of the Zhu Defendants' motion. Plaintiff's opposition addresses only the second issue, related to financial records. This issue is relevant to proof of damages. However, because the Court has concluded that Defendants are entitled to summary judgment based on the liability issue, it need not reach the issue of damages. As a result, the parties' discovery dispute concerning the financial records does not prevent the Court from resolving the instant motion. Plaintiff does not argue that the first issue, which relates to the Plaintiff's breach of contract claim against Defendant STA, or the third issue, which relates to a privilege log issue, impact the present motion, and the Court concludes they do not. The Court will not take further action on the discovery letter brief at this time. To the extent discovery issues related to STA remain, those can be renewed if and when STA appears in the case.

### E. The Zhu Defendants' Request for Sanctions.

The Zhu Defendants request that the Court sanction Plaintiff for allegedly filing and pursuing a baseless lawsuit. Rule 11(c)(2) of the Federal Rules of Civil Procedure requires that "[a] motion for sanctions under this rule shall be made separately from other motions…" Fed. R. Civ. P. 11(c)(2). Because the request for sanctions was included in the Zhu Defendants' summary judgment reply, the Court cannot entertain it. The Court also, in the exercise of its discretion, declines to grant the request for sanctions as part of its inherent powers at this time.

### F. The Court Directs Plaintiff to Serve STA.

In light of the Court's ruling on the Zhu Defendants' motion, the only claims remaining in this action are against Defendant STA for breach of contract and violations of the UCL. STA has yet to be served in this action.

Plaintiff has not shown that it has exercised due diligence in attempting to serve STA. The Clerk found Plaintiff's first attempt to serve STA with the first amended complaint deficient. (*See* Dkt. No. 37.) In December 2021, Plaintiff began attempting to serve STA through the Hague Convention and believes the process could take six months to a year. (Dkt. No. 61.) However, Plaintiff has not explained why it waited so long to begin the process of serving STA. Plaintiff did not begin the process of serving STA until three months after it filed the SAC. And STA has been

10

1  named in this action since its inception.

2  Further, Plaintiff has not expressly sought an extension of time to serve STA. In its motion
3  to modify the scheduling order, Plaintiff referenced needing more time to serve STA but argued
4  that STA was relevant only to the claims against the Zhu Defendants. (Dkt. No. 61.) Plaintiff
5  made no mention of the independent claims against STA. The Court denied that motion, and
6  discovery is now closed.

7  Although Rule 4(m)'s 120-day time limit does not apply to service in a foreign country,
8  *see Lucas v. Natoli*, 936 F.2d 432 (9th Cir. 1991), "[b]ecause district courts need to be able to
9  control their dockets,…the amount of time allowed for foreign service is not unlimited. *Nylock*
10 *Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005); *see also Miyasaki v. Treacy*, No
11 5:12-cv-04427 EJD, 2014 WL 6687321, at *4 (N.D. Cal. Nov. 24, 2014). The Court has not
12 previously set a deadline for service on STA, and it will not dismiss STA for failure to serve at
13 this time. However, the Court will not allow an unlimited time for service. The court DIRECTS
14 Plaintiff to effect service on STA and file a proof of service by June 20, 2022. If Plaintiff cannot
15 do so by that date, it shall file a status report detailing its efforts to serve STA, at which point the
16 Court may revisit whether dismissal is appropriate for failure to serve.

17                                              **CONCLUSION**

18 For the foregoing reasons, the Court GRANTS the Zhu Defendants' motion for summary
19 judgment. Federal Rule of Civil Procedure 54(b) provides that when an action presents more than
20 one claim for relief or when multiple parties are involved, the court may direct entry of final
21 judgment as to one or more, but fewer than all, claims or parties if the court expressly determines
22 that "there is no just reason for delay." Fed. R. Civ. P. 54(b). The Court has resolved the claims
23 against the Zhu Defendants, in full. Accordingly, Plaintiff is ORDERED TO SHOW CAUSE, in
24 writing, by no later than May 6, 2022, why this Court should not enter final judgment in favor of
25 the Zhu Defendants under Rule 54(b).

26 The Court DIRECTS Plaintiff to file a proof of service on STA by June 20, 2022. If
27 Plaintiff is unable to do so, it shall file a status report detailing its efforts to serve STA. The Court
28 VACATES the pretrial conference, jury selection, and trial dates. It shall reset those deadlines, as

1. needed, upon receipt of Plaintiff's status report regarding service.
2. **IT IS SO ORDERED.**
3. Dated: April 22, 2022

_____
JEFFREY S. WHITE
United States District Judge