UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEETEX LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ZEETEX, LLC, et al.,<br><br>    Defendants. | Case No. 20-cv-07092-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Re: Dkt. No. 90 |

Now before the Court for consideration is the motion to dismiss for lack of personal jurisdiction filed by specially appearing defendant Shanghai Tianan Textiles Co., Ltd. ("STA"). The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds this matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for December 9, 2022. For the following reasons, the Court GRANTS STA's motion.

**BACKGROUND**

Plaintiff Teetex LLC ("Teetex") filed the original complaint in this action on October 13, 2022. (Dkt. No. 1.) Plaintiff alleged that Teetex was founded by Dong "Tony" Chen ("Chen"), Anwen "Alvin" Li, and Juan "Joanne" Hu in 2012. (Compl. ¶ 17.) Plaintiff alleged that Chen and Li began working together at Standard Fiber, LLC ("Standard Fiber"), a textile design and manufacturing company owned by Alvin Li's brother, Andy Li. (Compl. ¶ 17.) Plaintiff alleged that at that time, Alvin Li owned STA, which functioned as Standard Fiber's agent in China. (*Id.* ¶ 18.) STA allegedly handled communications with Standard Fiber's Chinese suppliers. (*Id.*) Eventually, Standard Fiber terminated its relationship with STA. (*Id.*)

Plaintiff alleged that during that around 2013, Alvin Li and Chen decided to create a new

textile company together: Teetex. (*Id.* ¶¶ 20-22.) Teetex was a competitor of Standard Fiber. (*Id.*) STA became Teetex's agent in China, and from 2012 to 2016, handled communications with Teetex's Chinese suppliers on a variety of matters. (*Id.* ¶ 23.) STA and Teetex executed an agreement, under which STA agreed to protect the confidentiality of Teetex's information (the "Agency Agreement"). (SAC ¶¶ 17-18.) Plaintiff alleged that certain STA employees were permitted to access Teetex's confidential information. (*Id.*)

In 2015, Chen allegedly learned STA was doing business directly with Teetex's U.S. customers. (*Id.* ¶ 25.) Chen terminated Teetex's relationship with STA, and Teetex subsequently opened an office in China. (*Id.* ¶¶ 25-27.) Relations between Zhu and Chen broke down, and Zhu eventually agreed to sell his ownership interest in Teetex. (*Id.* ¶ 28.) The sale agreement prohibited Zhu and STA from "interfere[ing] with [Teetex's] business relationships with [Teetex's] currently existing customers." (*Id.* ¶ 29.) Plaintiff alleges that Zhu then became a product management and marketing manager at STA and that Zhu and STA began stealing customers and business from Teetex by appropriating and misusing without authorization Teetex's Confidential Information. (*Id.* ¶ 31.)

Based on these allegations, Teetex alleged a breach of fiduciary duty claim against all defendants, a trademark infringement claim against the Zhu Defendants, a trade secret misappropriation claim against all defendants, and violations of the UCL against all defendants.

The Zhu Defendants moved to dismiss on January 4, 2021. (Dkt. No. 20.) On February 20, 2021, Plaintiff filed an amended complaint. (Dkt. No. 24.) The amended complaint removed the UCL claim and continued to allege a trademark infringement claim against the Zhu Defendants and a trade secret misappropriation claim against all defendants. The Zhu Defendants moved to dismiss. The Court dismissed the trade secrets claims as time-barred, but allowed the trademark infringement claim against the Zhu Defendants to proceed. (Dkt. No. 39.)

On August 12, 2021, Plaintiff sought leave to file a second amended complaint alleging a breach of contract claim against STA based on the Agency Agreement and to reassert the UCL claim. (Dkt. No. 52.) The Court permitted amendment. (Dkt. No. 54.) Plaintiff filed the second amended complaint ("SAC") on September 3, 2021. (Dkt. No. 55.)

2

The SAC, the operative complaint, alleges STA is a Chinese company. (SAC ¶ 7.) The factual allegations in the SAC are mostly unchanged from the prior iterations of the pleadings. In addition to a trademark infringement claim against the Zhu Defendants, the SAC alleged a breach of contract claim against STA based on a breach of the Agency Agreement's requirement that STA not disclose Teetex's confidential information. (*Id.* ¶ 59.) The SAC also alleged a UCL claim against all Defendants.

On April 22, 2022, the Court granted the Zhu Defendants' motion for summary judgment, which resolved the claims asserted against the Zhu Defendants. (Dkt. No. 72.) The Court entered partial judgment in favor of the Zhu Defendants. (Dkt. No. 73.)

Following the Court's ruling on the Zhu Defendants' motion for summary judgment, the only claims remaining in the action were the breach of contract claim and UCL claim against STA. The Court directed Plaintiff to serve STA, who had yet to be served, or it would dismiss STA for failure to serve. (Dkt. No. 72.)

Plaintiff subsequently filed a motion for alternative service, which the Court granted. (Dkt. No. 88.) On October 13, 2022, STA moved to dismiss for lack of personal jurisdiction.[1]

## ANALYSIS

**A.    Applicable Legal Standard.**

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the Court "acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). When a motion to dismiss is based on written materials without an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts. *Id.* In this context, a prima facie showing means that

---

[1] STA maintains that email service through another defendant in this case was improper.

the plaintiff has produced sufficient admissible evidence, that if believed, would establish personal jurisdiction. *China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes,* No. 05-CV-1793-JW, 2005 WL 1513153, at *1 (N.D. Cal. June 27, 2005) (citations omitted). The Ninth Circuit has also held that a district court shall accept as true uncontroverted allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Love v. Associated Newspapers, Ltd.,* 611 F.3d 601, 608 (9th Cir. 2010); *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990). In doing so however, the court need not assume the truth of mere conclusory allegations. *China Tech. Global Corp.,* 2005 WL 1513153, at *1 (citing *Nicosia v. De Rooy,* 72 F.Supp.2d 1093, 1097 (N.D. Cal. 1999)).

Personal Jurisdiction may be either general or specific. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "Personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996)). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Schwarzenegger*, 374 F.3d at 801.

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. *See International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945) (further holding that the maintenance of an action in the forum must not offend traditional conceptions of fair play and substantial justice). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

**B.    Requests for Judicial Notice and Objections to Evidence.**

    **1.    Requests for Judicial Notice**

The Federal Rules of Evidence provide that judicial notice may be taken of adjudicative facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1)

generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. *See* Fed. R. Evid. 201.

Teetex requests that the Court take judicial notice of several documents in connection with its opposition to the motion to dismiss: (1) a decision from a San Mateo Superior Court Judge in *Wuxi Luoshe Printing and Dyeing Co., Ltd. et al. v. Anshan Li, et al.*, Case No. CIV502381 (July 12, 2016); and (2) an attorney declaration submitted in support of an opposition to a motion to quash service of summons in *Standard Fiber, LLC v. Teetex, LLC, et al.*, Case No. CIV526476 (Oct. 10, 2014).

Court records and court filings are proper subjects of judicial notice. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006). However, although the Court "may take judicial notice of the existence of unrelated court documents ... it will not take judicial notice of such documents for the truth of the matter asserted therein." *In re Bare Escentuals, Inc. Sec. Lit.,* 745 F.Supp.2d 1052, 1067 (N.D. Cal. 2010). Teetex seeks judicial notice of the state court order and the state court declaration, filed in unrelated cases, to support its position that Shanghai Tianan has contacts with California. It asks the Court to accept the judge's findings in *Wuxhi* and the attorney attestations in *Standard Fiber* as evidence of STA's contacts with California. This is outside of the scope of what may be properly judicially noticed. Thus, the Court GRANTS the request for judicial notice, in part. The Court takes notice of the fact that the court order and the attorney declaration were filed in their respective cases. But the Court declines to take judicial notice of the order or the declaration for the truth of matters asserted therein.

STA seeks judicial notice of the docket in the state court matter in San Mateo Superior Court and a filing that case. (*See* Dkt. No. 101.) As discussed above, the Court GRANTS STA's request and takes judicial notice of the existence of the court documents, but it does not take judicial notice of the documents for the truth of the matter asserted therein.

**2.      Evidentiary Objections**

STA objects to some evidence on which Teetex relies in support of its opposition to STA's motion to dismiss. Specifically, STA objects to Paragraph 12 of the Declaration of Tony Chen in

5

1  support of the Teetex's opposition to the motion to dismiss ("Chen Decl.") and Exhibit B attached
2  thereto.  The Court sustains STA's objection to paragraphs 12 and 13 because they lack
3  foundation.  The Court also sustains the objection to Exhibit B because it is not properly
4  authenticated and lacks foundation.  The Court will not consider paragraphs 12-13 and Exhibit B
5  in deciding this motion.  STA also objects to Paragraphs 11 of the Chen Declaration.  The Court
6  overrules this objection as moot because it did not need to rely on this evidence to resolve the
7  present motion.

### C. The Court Lacks General Jurisdiction Over STA.

General jurisdiction over a nonresident defendant exists when the defendant engages in "continuous and systematic general business contacts" that "approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801 (internal citations and quotation marks omitted). The jurisdictional burden requires a showing that the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014), *citing Goodyear Dunlop Tire Oper. v. Brown*, 564 U.S.C. 915, 919 (2011).

Teetex alleges that STA is "a company organized under the laws of the People's Republic of China, with its principal office in Shanghai, China." (SAC ¶ 7.)  There are few other allegations relating to STA in the SAC, but those that are present do not permit the Court to infer that STA was at home in California. (*See id.* ¶ 16 ("STA functioned as Standard Fiber's agent in China"); *id.* ¶ 30.)

STA submitted a declaration from its designated legal representative who attests that STA has never had an office or other physical presence in California, no employees in California, and does not conduct business in California.  (Dkt. No. 91, Declaration of Xinzhu Li ("Li Decl.") ¶¶ 3-8.)  In opposition, Teetex argues the Li declaration is misleading and asserts that STA does have the substantial, continuous, and systematic contacts with California.  However, Teetex has not produced sufficient admissible evidence establishing this fact.  Instead, it relies on inadmissible evidence and conclusory assertions regarding STA's contacts with California.  Without more, Teetex's arguments do not meet the burden to establish general jurisdiction.  Teetex has failed to

show that STA had affiliations with California so continuous and systematic as to render it at home in forum state.

### D. The Court Lacks Specific Jurisdiction Over STA.

Teetex argues the Court may exercise specific personal jurisdiction over STA. Establishing specific jurisdiction requires that: (1) the non-resident defendant purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Schwarzenegger*, 374 F.3d at 802. In analyzing whether the assertion of specific jurisdiction over a given defendant would be justified, the plaintiff has the burden of satisfying the first two prongs of the test. *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1076 (9th Cir.2011). If the plaintiff does so, the burden then shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

The first prong refers to methods of purposeful availment and purposeful direction. A court typically applies a "purposeful availment" analysis in cases of contract dispute, asking whether the defendant has "performed some kind of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* at 1077 (citations omitted); *Schwarzenegger,* 374 F.3d at 802-03. The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party of a third person." *Id.* In cases of tortious conduct, a court typically applies a "purposeful direction" analysis, considering the effects of the defendant's conduct. *Schwarzenegger,* 374 F.3d at 802-03. Because Teetex asserts a breach of contract claim against Shanghai Tianan, which is also the basis of the UCL claim, the Court applies the analysis for purposeful availment.

Generally, "'an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts' to support personal jurisdiction." *McGlinchy*

7

*v. Shell Chemical Co.,* 845 F.2d 802, 816 n. 9 (9th Cir.1988) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985)).  Thus, that Teetex, a California entity, had an agreement with STA, is insufficient on its own for the exercise of specific jurisdiction.

*Burger King*, the precedential authority on purposeful availment, looked at four primary factors relevant to this prong: (1) prior negotiations between the parties; (2) contemplated future consequences; (3) the terms of the contract; and (4) the parties' actual course of dealing.  471 U.S. at 479.  Courts consider these factors holistically to determine whether, on balance, an out-of-state defendant purposefully availed itself of the privileges of conducting business in the forum state.  *See LocusPoint Networks, LLC v. D.T.V., LLC*, Case No. 14-cv-1278-JSC, 2014 WL 3836792, at *8 (N.D. Cal. Aug. 1, 2014) (finding the purposeful availment requirement was met where three factors favored the plaintiff and one was neutral).[2]

**1.   Prior negotiations**

The first factor looks at where and how the parties conducted their negotiations.  "[I]f the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986); *see also Burger King*, 471 U.S. at 479-80 (finding that it was "presumptively reasonable" for the defendant to be subject to personal jurisdiction in Florida because he "deliberately reached out" to negotiate with a Florida corporation (alterations and quotation marks omitted)).  Conversely, "[w]hen a California business seeks out purchasers in other states and deals with them by out-of-state agents or by interstate mail and telephone, it is not entitled to force the customer to come to California to defend an action on the contract."  *Roth*, 942 F.2d at 621-22 (alterations and quotations omitted).

Teetex asserts that Alvin Li approached Chen about forming a relationship between Teetex and STA, eventually memorializing the relationship in the Agency Agreement.  This fact weighs in favor of purposeful availment.  (Chen Decl. ¶¶ 4-6.)  However, the Agency Agreement states it was signed in Shanghai, and there is no evidence that Li traveled to California during the

---

[2] Neither party addresses these factors in great detail.  Teetex cites several cases discussing the purposeful direction test, which are inapposite because that test is used cases of tortious conduct.

negotiations.³ (Chen Decl., Ex. A ("Agency Agreement") at 5.) Thus, the location of the negotiations and execution of the Agreement do not support purposeful availment. *See Long v. Authentic Athletix LLC*, Case No. 16-cv-03129-JSC, 2016 WL 6024591, at *4 (N.D. Cal. Oct. 14, 2016), *aff'd*, Case No. 18-17061, 2020 WL 1910724 (9th Cir. Apr. 20, 2020) ("The location of the negotiations does not support purposeful availment because [the defendant] never traveled to California to conduct any negotiations."). Teetex asserts that Li and Chen discussed the Agreement over the phone and via email while Chen was in California, but the fact that Chen was in California during these conversations does not establish purposeful availment. *LocusPoint Networks,* 2014 WL 3836792, at *5; *see Roth v. Garcia Marquez,* 942 F.2d 617, 622 (9th Cir.1991) ("[U]se of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state."). Finally, the record does not show that STA previously conducted business in California.⁴ The Court finds this factor weighs against purposeful availment.

### 2. Contemplated future consequences

In evaluating the contemplated future consequences factor, courts have focused on whether the contract established "continuing relationships and obligations" between the parties. *Burger King*, 471 U.S. at 473. Here, the Agency Agreement provides for a trial period of one year, after which it would automatically renew for one-year periods if no party amended or terminated the agreement. This suggests that the parties contemplated a continuing relationship. The Court finds the evidence, though sparse, suggests that the parties envisioned a continuing relationship and

---

³ Chen attests in his declaration that Teetex signed the Agency Agreement in California, which appears contradictory to the face of the Agency Agreement. (*See* Chen Decl. ¶ 5.) But even if Teetex signed the contract in California that would not be sufficient to avail STA of the benefits and protections of California's laws. There is no allegation that STA signed the Agreement in California, and "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Teetex's signing of the contract in California was a unilateral activity and does not establish STA's purposeful availment of California's laws.

⁴ Teetex argues STA was initially established as the Chinese office of Standard Fiber, a California corporation. Based on statements from documents from other court proceedings, Teetex asserts that Standard Fiber and STA were effectively the same company in an apparent effort to create additional contacts between STA and the forum. However, as discussed above, the Court cannot take judicial notice of the truth of facts asserted in documents from other court proceedings.

thus, this factor weighs in favor of purposeful availment.

### 3.  Terms of the contract

Terms that provide fair notice to a defendant that he may possibly be subject to suit in the forum state weigh in favor of a purposeful availment finding. *See Burger King,* 471 U.S. at 463. Here, the terms of the contract do not support purposeful availment. All the terms expressly contemplate actions by STA in China. The Agreement was written in Chinese and executed in Shanghai. The contract does not reference or implicate California. Although the Agreement does not contain a forum selection clause or choice-of-law provision, it expressly states that disputes may be resolved by "the China International Arbitration Committee."[5] (Agency Agreement at p. 4.) The terms of the contract, which lack any connection to California, weigh strongly against a finding of purposeful availment.

### 4.  Actual course of dealing

With respect to the parties' actual course of dealing, the evidence shows that STA's obligations under the contract were performed in China, not in California, and the Agency Agreement does not include any California contract obligations. These facts weigh against a finding of jurisdiction. *See, e.g.*, *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (holding court lacked jurisdiction where the contract was negotiated in England, made no reference to California, and no authorized agents of the company were alleged to have performed or executed any portion of the contract in California.").

Under *Burger King*, however, the physical location of the performance of the contract is not dispositive; the "quality and nature" of the defendant's relationship with the forum plaintiff is what matters. *See Burger King*, 471 U.S. at 479. Here, the quality and nature of the relationship also do not favor purposeful availment. The SAC does not allege that STA performed any California-specific actions, and Teetex has not provided sufficient evidence from which the Court

---

[5] The Agreement also provides that "litigation may be filed to the court under local jurisdiction." (Agency Agreement at p. 4.) This ambiguous phrase does not establish with that the parties designated California as the forum for dispute resolution. The Agreement's focus on China combined with the specific reference to the China International Arbitration Committee suggests that to the extent the parties did envision a forum for dispute resolution, it was China.

10

can conclude that STA had a substantial connection with California. Chen attests that from 2012 to 2016, STA acted as Teetex's exclusive agent in China and received agency fees from Teetex on a regular basis, which were paid from California. (Chen Decl. ¶ 8.) However, courts have found that similar wire transfers from a plaintiff in the forum to a non-forum defendant constitute unilateral activity that cannot be considered an act purposefully availing the defendant to the laws of California. *See LocusPoint Networks,* 2014 WL 3836792, at *6. Chen also attests that "[f]rom 2012 to 2016, [STA] shipped textile products to California on a regular basis." (Chen Decl. ¶ 8.) This assertion, without more, is insufficient to establish purposeful availment. Teetex offers no further details or admissible evidence to support this contention. The SAC does not allege that STA shipped products to California and although the Agency Agreement refers to exports and international shipping, it does not refer to California or shipments to California. Based on the evidence in the record, the parties' actual course of conduct shows that STA worked with Teetex to accommodate Teetex's need for a handler in China; STA did not "invoke the benefits and protections" of California law. Thus, the Court concludes Teetex has not met its burden to show that this factor favors purposeful availment.

On balance, three of the four factors weigh against purposeful availment. The Court finds Teetex has failed to meet its burden to show that STA purposefully availed itself of the privilege of conducting business in California. Because the Court concludes Teetex has not met the first prong of the specific jurisdiction test, it need not examine STA's forum related activities or whether the exercise of jurisdiction would be unreasonable.

Teetex has failed to make a prima facie case that jurisdiction over Defendants is proper. STA's motion to dismiss is granted.

//
//
//
//
//
//

11

## CONCLUSION

For the foregoing reasons, the Court GRANTS STA's motion to dismiss. STA is dismissed without prejudice. Teetex may pursue its claims against STA in a forum that may properly exercise jurisdiction over STA.

A separate judgment shall issue, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 5, 2022

JEFFREY S. WHITE
United States District Judge